IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Michael Lee Berry,

        Plaintiff,

        vs.                Case No. 12-3179-JTM

Travis Toms, *et al.*,

        Defendants.


MEMORANDUM AND ORDER


Michael Lee Berry, appearing *pro se*, has brought the present action against four Kansas City, Kansas police officers (Travis Toms, David Underwood, Patrick Locke, and Jesse Crawford), alleging the officers violated the Fourth Amendment by unreasonably damaging his car and using excessive force when he was arrested on August 21, 2010. Berry is currently in prison, following his convictions for battery and aggravated battery on law enforcement officers, felony fleeing and eluding, and criminal damage to property. The defendants have moved for summary judgment, asserting the protection of qualified immunity.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable

doubt.  *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985).  The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance.  *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs.  Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*).  One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

### Findings of Fact

On August 21, 2010, the defendants were in uniform, working the night-time community policing unit. This assignment includes patrolling high crime areas. Officer Toms and Officer Locke were patrolling in a marked patrol car near 18th and Quindaro Boulevard in Kansas City, Kansas. Around 8:30 p.m., they saw a red Chevrolet Lumina driving south on 18th Street in excess of the speed limit. The officers turned on the patrol car's lights and sirens and tried to stop the Lumina.

Berry, who was driving the Lumina, refused to stop. He tried to escape, accelerating to 60 miles per hour. The speed limit on 18th Street is 30 miles per hour. Toms and Locke asked for and were given permission for pursuit by their supervisor, Sergeant Steven Haulmark.

Berry passed a vehicle, crossing over the double yellow lines into oncoming traffic. Without signaling, Berry turned west on Stewart, passing through a stop sign without stopping. The Lumina's tires struck the curb, left the ground, and came down hard.

Defendants Crawford and Underwood were in another patrol car when they heard of the chase. They drove west on Parallel Parkway, paralleling the pursuit.

After Berry's car had stopped his car near 25th and Stewart, Locke stopped his patrol car also. Locke and Toms approached Berry's car, Locke on the driver's side and Toms on the other.

Berry was in the driver's seat of the car, yelling and screaming and attempting to start the car. The front driver's-side door of the car was locked, with the window rolled up most of the way.

Locke ordered Berry to get out of the car, but Berry ignored him. Locke then used his baton to break out the front driver's-side window of the Chevrolet.

According to Locke, as set forth in the defendants' Motion for Summary Judgment, he may have also struck Berry with the baton when he broke the window. He states that this was not intentional. Berry claims that Locke and Toms did not order him from the vehicle. However, Berry supplies no evidence in support of this assertion, whether by affidavit testimony or otherwise. [1]

---

[1] "[S]ummary judgment is proper where a plaintiff fails to challenge the affidavits or other proof filed by a defendant in support of its motion." *Lopez–Bignotte v. Ontivero*, 42 Fed. Appx. 404, 408 (10th Cir.2002) (quoting *Parkinson v. California Co.*, 233 F.2d 432, 438 (10th Cir.1956)). Pro se litigants must still comply with the rules of the court, including the requirement to provide admissible evidence in support of a response to summary judgment motions. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir.1988); *See, e.g., Brown .v Kocharnowski*, 2012 WL

It is uncontroverted that Locke leaned through the window and grabbed hold of the steering wheel and the gearshift to prevent Berry from fleeing. He pulled up on the gearshift, trying to keep it in park.

Berry does not controvert Locke's statement that Locke heard the car start and the engine rev. Berry pulled down on the gearshift with both hands, causing the car to move.

It is uncontroverted that the car lunged backwards, while Locke was still leaning through the window, his right hand on the door frame and his left hand on the gearshift. The car's mirror was against his left hip, and he was unable to get away.

Sgt. Haulmark had arrived at the scene and had parked his car behind the Chevrolet. As the Chevrolet went backwards, it struck the right front fender of Haulmark's car and pinned Officer Locke with his back against it.

Toms, who was then in front of the Lumina, thought that Locke was in danger of being seriously injured. He pointed his gun in Berry's general direction and considered shooting Berry, but was afraid that he might hit Locke. He holstered his gun and drew his baton.

The front passenger door of the Chevrolet was locked, so Toms used his baton to break the window. He then holstered the baton and leaned into the car. He wrestled with Berry for control of the steering wheel, the gear shift, and the keys. Using his hands, he struck Berry on the hands in an attempt to gain control of the car.

The plaintiff claims that, after breaking the passenger side window, Toms "reached inside of the vehicle & struck Berry in the head & face area twice knocking him unconscious." (Dkt. 67, at 2). He states that he "has no other memory until after being

---

4127959, *5 (D.Kan. 2012) (granting summary judgment where *pro se* plaintiff "did not file any affidavits or submit any other admissible evidence to refute the evidence filed by the defendants in support of their motion for summary judgment"); *Brown v. Dorneker*, 2008 WL 3334025, *1 (D. Kan. 2008) ("[e]ven a *pro se* plaintiff must present some 'specific factual support' for his allegations" (quoting *Pueblo*, 847 F.2d at 649)).

tazed, unaware of which officer tazed him." (*Id.*) The plaintiff supplies no admissible evidence in support of either assertion.

It is uncontroverted that the weight of the Lumina broke Locke's Taser holster and threw his Taser out. Then the mirror on the Chevrolet broke, freeing Locke. The car's tires ran over Locke's right foot and the fender banged into his right knee. Although Berry denies injuring Locke, he fails to support the denial with any citation to admissible evidence.

Locke doubled over in pain. He got up and ran back to his patrol car, thinking that the pursuit was going to be on again.

From the passenger side, Toms managed to steer the Berry's car backwards into a yard, where it stopped.

Crawford and Underwood arrived and found Locke running up to his patrol car. Locke pointed to the east and said, "He just rammed me." Crawford and Underwood drove further east and spotted a red car on the south side of Stewart. The car was partially in a yard and partially in the street.

Underwood stopped in front of the car, and Crawford and he got out and went to the driver's side. They saw Berry inside the car, with both hands on the steering wheel, screaming and yelling and rocking back and forth. Crawford saw that Berry had blood on his face. The officers ordered Berry to get out of the car.

The front driver's-side window was broken out, and there was broken glass in the car. Crawford and Underwood reached through the window and tried to gain control of Berry, but Berry fought them, pushing their arms out of the way, locking his arms on the steering wheel, and twisting and moving around and pulling away from them as he tried to get the car started.

Crawford tried to control Berry by reaching through the front driver's-side window and behind his neck and grabbing his right shoulder with his right hand. He placed his left

5

hand on Berry's left shoulder.

It was hot, and Crawford was sweating. His right hand slipped from Berry's right shoulder, ending up in front of Berry's face. Crawford felt a very sharp pain as Berry bit down on his right index finger. At that moment, the car jerked forward, ripping Crawford's finger from Berry's mouth. Crawford screamed in pain.

Underwood deployed his Taser. The prongs struck Berry in the torso. After the first cycle, Berry continued to fight and resist, so Underwood gave him a second five-second cycle. While Crawford and Underwood were trying to gain control of Berry on the driver side, Toms was struggling with Berry through the front passenger side window. He was able to get hold of the keys and throw them out of reach. He tried to pull Berry out through the passenger-side window, but was unable to do so.

Again, Berry asserts that throughout this time he was unconscious. Berry denies biting Crawford, but again supplies no admissible evidence in support of his denial.[2]

Other officers arrived and removed Berry from the passenger side of the car and handcuffed him.

Crawford backed out of the way when Underwood deployed his Taser. Crawford saw that he had a cut on his finger and, since Berry was bleeding from the face, was concerned about exposure to blood-borne pathogens. He went to trunk of the patrol car and attempted to clean his finger. He was not involved in removing Berry from the car.

By the time Locke turned the patrol car around, the Chevrolet had stopped and

---

[2] As with his other assertions, Berry supplies no admissible evidence, in the form of affidavit or otherwise, supporting the claim that he did not bite Crawford. Further, as noted below, Berry was found guilty of the crime of battery against Crawford. The plaintiff is therefor precluded from arguing that the battery did not occur. *See Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004)(finding that the Full Faith and Credit Act, 28 U.S.C. § 1738 requires giving same preclusive effect to state court judgments as that state would give); *Hill v. Day*, 168 Kan. 604, 609-10, 215 P.2d 219, 223-24 (1950) (under Kansas law "a judgment of conviction amounts to a conclusive determination that probable cause for the arrest and prosecution existed").

officers were taking Berry into custody.

After his arrest, Berry was taken by ambulance to Kansas University Medical Center. He was later transported to the Wyandotte County Detention Center.

On April 27, 2011, a Wyandotte County jury convicted Berry of the following crimes in connection with the August 21, 2010 incident:

(a) Aggravated battery against a law enforcement officer (Locke) with a motor vehicle in violation of K.S.A. 21-3415(a)(3);

(b) Battery on a law enforcement officer (Crawford) in violation of K.S.A. 21-3413(a)(2);

(c) Fleeing or attempting to elude a police officer while committing five or more moving violations in violation of K.S.A. 8-1568(b); and

(d) Criminal damage to property in violation of K.S.A. 21-3720(a)(1) and (b)(3).

On November 2, 2012, the Kansas Court of Appeals affirmed Berry's convictions.


*Conclusions of Law*

Under the doctrine of qualified immunity, government officers are protected from civil suits for damages if their conduct does not violate any clearly establish right belonging to the plaintiff. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts the defense of qualified immunity, the plaintiff must "properly allege a deprivation of a constitutional right and must further show that the constitutional right was clearly established at the time of the violation." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir.2012). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (quoting *Harlow v. Fitzgerald*, 457 U.S. at 818–19).

> In resolving questions of qualified immunity, courts are required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If, and only if, the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case." *Ibid*. Although this ordering contradicts "[o]ur policy of avoiding unnecessary adjudication of constitutional issues," *United States v. Treasury Employees*, 513 U.S. 454, 478, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) (citing *Ashwander v. TVA*, 297 U.S. 288, 346–347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring)), we have said that such a departure from practice is "necessary to set forth principles which will become the basis for a [future] holding that a right is clearly established," *Saucier, supra*, at 201, 121 S.Ct. 2151.

*Scott v. Harris*, 550 U.S. 372, 377 (2007). The traditional summary judgment analysis arises only if the plaintiff meets the initial two-part burden of showing the violation of a constitutional right and that the right was clearly established at the time of the alleged violation. *See Rojas v. Anderson*, 7272 F.3d 1000, 1004 (10th Cir. 2013).

Berry claims that defendants violated the Fourth Amendment by breaking his car windows, and were guilty of excessive force in effecting his arrest. The defendants argue that they are entitled to summary judgment under the doctrine of qualified immunity. They do not assert that the plaintiff has failed to allege violation of specific constitutional rights. Rather, they argue that the facts do not demonstrate the violation of any clearly-established right. (Dkt. 65,a t 10, Dkt. 72, at 11).

The court finds that the defendants are entitled to qualified immunity, because Berry has failed to show that the defendants violated any clearly-established constitutional right. Based on the admissible evidence before the court, it is uncontroverted that the officers were presented with a very dangerous situation. Berry had previously attempted to flee police at double the posted speed limit, driving dangerously through a large city. His car was stopped, but Berry ignored police orders to get out. Berry was yelling and screaming, and he tried restart the car. The officers tried to stop him, but Berry  fought back and was

able to cause the car to lunge backward, pinning one officer and ramming a police vehicle. Berry then bit another officer who tried to intervene.

Under these circumstances, Locke and Toms were entitled to break the car windows in attempt to put an end to the danger. There is no admissible evidence that any officer intentionally struck Berry with their batons. Toms, seeing his patrol partner pinned by Berry's car, and perhaps being gravely injured, was justified in drawing (but not using) his weapon. Crawford and Toms were both justified in attempting to wrestle control of the vehicle from Berry. And, seeing Berry bite Crawford, Underwood was justified in using a taser device to finally subdue Berry.

Berry has pointed to no cases which would suggest that the officers, under these circumstances violated any clearly established law. For example, officers may not use a taser device to subdue persons suspected of misdemeanor criminal conduct. *See Cavanaugh v. Woods Cross City*, 625 F.3d 661 (10th Cir. 2010); *Casey v. City of Federal Heights*, 509 F.3d 1278 (10th Cir. 2007). But such cases have no application here, where Berry was suspected of multiple felonies and represented a continuing risk of flight and danger to the safety of other persons. To the contrary, an officer may lawfully use force if he or she reasonably has a probable cause belief that there is a risk of serious physical harm to other persons. *See Thomas v. Durastanti*, 607 F.3d 655, 663-64 (10th Cir. 2010).

Under circumstances of the case, a reasonable police officer in the positions of the defendants would have been justified in believing that the use of limited, non-deadly force (the use of night sticks to break car windows, physical restraint of the plaintiff, and ultimately the use of a taser) were justified for the purpose of protecting the police and the public.

IT IS ACCORDINGLY ORDERED this 6th day of November, 2014, that the defendants' Motion for Summary Judgment (Dkt. 64) is hereby granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE